IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MANDY SPRINGER,

                    Plaintiff,                            No. 03:14-cv-01450-HZ

        v.

CAROLYN W. COLVIN,                        OPINION & ORDER
Acting Commissioner of Social Security,

                    Defendant.

George J. Wall
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

        Attorney for Plaintiff

Billy J. Williams
ACTING UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

/ / /

1 - OPINION & ORDER

Lisa Goldoftas
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Mandy Springer brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on November 2, 2010, alleging an onset date of January 1, 2010. Tr. 227-32.  Her application was denied initially and on reconsideration.  Tr. 143-47, 151-53.

      On December 20, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ).  Tr. 65-100.  On January 24, 2013, the ALJ found Plaintiff not disabled.  Tr. 46-64.  The Appeals Council denied review.  Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on having bipolar disorder and fibromyalgia.  Tr. 273. At the time of the hearing, she was thirty-six years old.  Tr. 70.  She has completed the ninth grade and has no past relevant work.  Tr. 57, 71.  Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

2 - OPINION & ORDER

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since her application date.  Tr. 51.  Next, at steps two and three, the ALJ determined that

Plaintiff has severe impairments of fibromyalgia, urinary incontinence, depression, bipolar

disorder, and borderline personality characteristics, but that the impairments do not meet or

equal, either singly or in combination, a listed impairment.  Tr. 51-53.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC)

to lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk 6 hours in

an 8 hour workday with normal breaks; sit up to 6 hours in an 8 hour work day with normal

breaks; occasionally climb ladders, ropes, and scaffolds; avoid exposure to extreme cold and

hazards (such as heights and dangerous machinery); and remember, understand, and carry out

simple, routine tasks and instructions typical of SVP 1 or 2.  Tr. 53.  Additionally, she needs easy

access to a restroom, can have no public interaction, and can have no more than incidental, casual

interaction with co-workers.  Id.  With this RFC, the ALJ determined, at step five, that Plaintiff is

able to perform jobs that exist in significant numbers in the economy such electronics worker,

small products assembly, and bottle packer.  Tr. 58.  Thus, the ALJ determined that Plaintiff is

not disabled.  Id.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred by failing to credit the opinion of examining psychologist James B. Powell, Psy.D.  Dr. Powell evaluated Plaintiff on April 26, 2012.  Tr. 1035-44.  He conducted an interview with Plaintiff and reviewed case history documents from Oregon Health & Sciences University's Richmond Family Medical Clinic as well as Western Psychological & Counseling Services.  Tr. 1035.  Although he did not administer standardized psychological tests, he did conduct mental status/intellectual screening exercises.  Tr. 1035, 1041, 1042.  Dr. Powell wrote a narrative report and completed a two-page Mental Residual

Functional Capacity Report (MRFC).  Tr. 1045-46.

Based on his evaluation, Dr. Powell opined that Plaintiff met the "DSM-IV-TR"[1] diagnostic criteria for bipolar disorder, not otherwise specified.  Tr. 1042.  He also diagnosed Plaintiff with chronic posttraumatic stress disorder.  Tr. 1041, 1042.  He found her to have a moderate level of impairment in sustained concentration, persistence, and pace, especially during periods of increased frustration and agitation.  Tr. 1042.  He noted her difficulty in the performance of mental status/intellectual screening exercises including "episodic breaks in attention and concentration when recalling a series of digits in both a forward and backward manner."  Id.

Dr. Powell further opined that Plaintiff had a marked impairment in her ability to manage activities of daily living.  Tr. 1043.  He noted her ability to adequately manage several home responsibilities including chores, personal hygiene, food shopping, food preparation, and the use of public transportation.  Id.  But, he noted her history of difficulty managing financial resources in a responsible manner, especially when she is in more of a manic state.  Id.  He noted her current unemployed status and the fact that she had to rely upon "other sources" for financial support.  Id.  He also noted her current lack of residential stability and homelessness.  Id.

Dr. Powell also mentioned Plaintiff's inability to control episodes of agitation and verbal aggression which caused employment loss.  Id.  At the time of her evaluation with him, Plaintiff had been banned from Department of Human Services property because of episodes of verbal aggression.  Id.  He gave Plaintiff a current Global Assessment of Functioning (GAF) score of

---

[1] Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. TR 2000) ("DSM–IV–TR").

41. Tr. 1042.

In his MRFC, Dr. Powell assessed Plaintiff as having marked limitations in the abilities
to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3)
perform activities within a schedule, maintain regular attendance, and be punctual within
customary tolerances; (4) complete a normal workday and workweek without interruptions from
psychologically-based symptoms and to perform at a consistent pace without an unreasonable
number and length of rest periods; (5) accept instructions and respond appropriate to criticism
from supervisors; and (6) set realistic goals or make plans independently of others.  Tr. 1045-46.

Dr. Powell assessed Plaintiff as moderately limited in the abilities to: (1) maintain
attention and concentration for extended periods; (2) work in coordination with or proximity to
others without being distracted by them; (3) interact appropriately with the general public; (4) get
along with co-workers or peers without distracting them or exhibiting behavioral extremes; (5)
maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
and (6) respond appropriately to changes in the work setting.  Tr. 1046.

The ALJ gave Dr. Powell's assessment "little weight."  Tr. 56.  The ALJ accepted the
moderate limitations on contact with the public and co-workers but found Dr. Powell's opinion
overall to be inconsistent with Plaintiff's activities of daily living and Dr. Powell's own
examination.  Id.  She noted that Dr. Powell found Plaintiff markedly restricted in activities of
daily living even though Dr. Powell himself acknowledged that Plaintiff could shop, clean, cook,
use public transportation, maintain her hygiene, and care for her daughter.  Tr. 56-57.  The ALJ
noted that Dr. Powell based the marked restriction on Plaintiff's poor work history and poor
financial management.  Tr. 57.  But, she explained, Plaintiff "has lived on public assistance and

help from relatives." Id.

The ALJ rejected Dr. Powell's finding that Plaintiff had problems with memory, concentration, attention, abstraction, judgment, and insight because Dr. Powell failed to address the effect that Plaintiff's two-three times daily marijuana use had on her responses in the mental status/intellectual screening examination. Id. Finally, the ALJ rejected Dr. Powell's GAF score as inconsistent with Plaintiff's daily activities and with the "treating evidence." Id.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Plaintiff argues that the reasons given by the ALJ for rejecting Dr. Powell's opinion are not supported in the record. Plaintiff also notes that the ALJ failed to even mention Dr. Powell's assessment that Plaintiff has marked limitations in the ability to accept instructions and respond appropriately to criticism from supervisors.

Defendant argues that the ALJ properly considered the evidence and that because the ALJ's interpretation of the evidence was rational, her conclusion must be upheld. Defendant also maintains that the GAF score of 41 was only one of approximately two dozen GAF scores in the record, the majority of which were 51 and above, indicating moderate as opposed to serious

symptoms.  Defendant argues that the ALJ reasonably considered the entire record in discounting Dr. Powell's opinion based on the low GAF score.

I agree with Plaintiff.  The ALJ erred in rejecting Dr. Powell's opinion based on Dr. Powell's determination that Plaintiff was markedly limited in her activities of daily living.  The regulations indicate that "activities of daily living" are "adaptive activities such as cleaning, shopping, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1).  Thus, while Plaintiff adequately performs many of these activities, Dr. Powell properly considered her inability to maintain a residence and her financial irresponsibility in assessing her activities of daily living.

The basis for the ALJ's rejection of this marked restriction is not entirely clear from the ALJ's comment that "the claimant has lived on public assistance and help from relatives."  Tr. 57.  As I understand the ALJ, she rejected the underlying basis for Dr. Powell's marked activities of daily living restriction because, in the ALJ's opinion, Plaintiff's poor work history was not caused by Plaintiff's limitations but was because the public assistance and help from relatives meant she did not need to work.

The problem with the ALJ's rational is that it does not address two of the three reasons Dr. Powell gave for finding Plaintiff markedly restricted in her activities of daily living: Plaintiff's inability to handle her finances and her homelessness.  Because the ability to maintain a residence and the ability to pay bills are properly considered as activities of daily living and because the ALJ failed to reject these bases for Dr. Powell's opinion, the ALJ erred in concluding that the record did not support Dr. Powell's restrictions in activities of daily living.

9 - OPINION & ORDER

Next, the ALJ rejected Dr. Powell's opinion regarding Plaintiff's abilities in memory, concentration, attention, abstraction, judgment, and insight because, according to the ALJ, Dr. Powell failed to address the effect of Plaintiff's marijuana use on her responses to the mental status/intellectual screening examination questions. Dr. Powell noted Plaintiff's moderate level of impairment in the areas of sustained concentration, persistence, and pace as well as her breaks in attention and concentration when performing intellectual screening exercises. Tr. 1042. He also found some limitations in her abstract reasoning abilities. Tr. 1041. His MRFC assessed her with moderate limitations in the ability to maintain attention and concentration for extended periods. Tr. 1046. He specifically noted that she had a medical marijuana card and used the drug daily, averaging two to three times per day. Tr. 1040. He also noted that on the day of her appointment with him, before her arrival, she had taken 200 milligrams of lamotrigine, 50 milligrams of omeprazole, 30 milligrams of Cymbalta, and Haldol. Tr. 1041. She had also smoked "three hits" of marijuana. Id.

At the hearing, Plaintiff testified that she used the medical marijuana for both her fibromyalgia and her bipolar disorder. Tr. 81-82. The ALJ found both of these to be severe impairments. Tr. 51.

The ALJ provides no basis for what appears to be her opinion that medical marijuana only, but none of the other drugs that Plaintiff took before being evaluated by Dr. Powell, would affect her responses to mental status/intellectual screening questions. Dr. Powell knew that Plaintiff was using medical marijuana two to three times per day and knew that she had smoked a few hits at some point before he examined her. Yet Dr. Powell made no suggestion that Plaintiff's responses to the mental status and intellectual functioning exam were invalid because

she was a medical marijuana user.

Additionally, the ALJ must "consider all factors that might have a 'significant impact on an individual's ability to work,' including the side-effects from medications." Butler v. Astrue, 773 F. Supp. 2d 975, 984 (D. Or. 2011) (quoting Erickson v. Shalala, 9 F.3d 813, 818 (9th Cir. 1993)); see also Larson v. Colvin, No. 01:13-cv-00659-HZ, 2014 WL 1877406, at *13 (D. Or. May 7, 2014) ("ALJ must consider medication side effects in the disability determination process because, like pain and other symptoms, side effects can significantly impact an individual's ability to work") (citing Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988)).

If a claimant's ability to function in any capacity is affected by the side effect of a legally prescribed drug, which in Oregon includes medical marijuana, then the ALJ must consider the impact of the drug. Here, the ALJ made an unsupported assumption that Plaintiff's medical marijuana use (but again, not any of the other four drugs she had taken) affected her responses on the mental status/intellectual screening evaluation. This was error. And, even assuming the marijuana use had an effect on those responses, it is one the ALJ has to accept given that it is a side effect of a legally prescribed drug used to treat two impairments the ALJ herself found to be severe. The ALJ erred by discounting Dr. Powell's limitations in memory, concentration, and attention because of the alleged impact Plaintiff's medical marijuana use had on her responses.

The ALJ also discounted Dr. Powell's opinion because Dr. Powell's GAF score of 41 was inconsistent with Plaintiff's daily activities and the treating evidence. A GAF score of 41 falls within the range of 41 to 50, indicating "serious symptoms" or "serious impairment in social, occupational or school functioning. DSM-IV-TR at 34. As noted above, while Dr. Powell

acknowledged Plaintiff's ability to perform many activities of daily living, he also found her markedly impaired in her performance of those activities because of her financial irresponsibility, homelessness, and problems keeping a job. As explained above, the ALJ improperly rejected Dr. Powell's opinion as a result of his marked restriction in Plaintiff's activities of daily living. Because the evidence supports his determination as to at least her financial issues and homelessness, his assessment that her symptoms were serious or that she suffered from serious impairment in functioning is not, as the ALJ found, contradicted by Plaintiff's daily activities.

Nor is his GAF score of 41 inconsistent with the treatment records. GAF scores are used to rate an individual's functioning for the "current period," meaning at the time of the evaluation. DSM-IV-TR at 33. Dr. Powell's score expressly states that it is the "current" score. Tr. 1042. It is true that beginning in late 2010 and continuing through May 2011, the providers at Western Psychological & Counseling Services assessed Plaintiff with GAF scores of between 51 and 58 indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. E.g., Tr. 776, 727, 726, 723, 782, 784 (showing scores of 51, 52, 51, 57, 56, and 55). But, the two scores issued by providers at Western Psychological in the months before and after Dr. Powell's GAF score of 41, were 42 and 50, both of which indicate serious symptoms or serious impairment in functioning. Tr. 1066 (January 26, 2012 score of 42); Tr. 1051 (August 3, 2012 score of 50). Scores of 40 were also assessed in late 2007 and again in 2010. Tr. 467, 614. Because the GAF score is an assessment of the individual at that particular time, the record shows that Plaintiff has experienced periods in which treating providers assessed her as either moderately or seriously impaired. Given that Dr. Powell's score is bracketed by treating providers' scores consistent with Dr. Powell's score showing serious symptoms or impairment, it

was error for the ALJ to reject Dr. Powell's opinion as being inconsistent with the treating records.

Finally, the ALJ failed to mention Dr. Powell's assessment that Plaintiff has a marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. Defendant argues that because the ALJ gave little weight to Dr. Powell's opinion, his opinion was not probative and thus justifiably ignored by the ALJ. See Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ did not err when he ignored evidence which was not significant nor probative). Because the ALJ erred in giving Dr. Powell's opinion "little weight," it cannot be said that his opinion was not probative. Thus, the ALJ erred by not discussing the marked limitation in dealing with supervisors.

Plaintiff requests that the ALJ's decision be reversed and that the Court remand the case to properly consider Dr. Powell's opinion. I agree with Plaintiff that remand for additional proceedings is the appropriate course.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this ____ day of _____, 2015

Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER